NOT FOR PUBLICATION                                              (Document No. 2)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| STANKER & GALETTO, INC., | |
| Plaintiff, | Civil No. 12-5447 (RBK/KMW) |
| v. | **OPINION** |
| THE NEW JERSEY REGIONAL COUNCIL OF CARPENTERS OF THE UNITED BROTHERHOOD OF CARPENTERS AND JOINERS OF AMERICA | |
| and | |
| CARPENTERS LOCAL 255 OF THE UNITED BROTHERHOOD OF CARPENTERS AND JOINERS OF AMERICA | |
| Defendants | |

**I.  Introduction**

Plaintiff Stanker & Galetto, Inc. ("Plaintiff") brought suit in this matter seeking a declaratory judgment that it had lawfully repudiated a collective bargaining agreement ("Agreement") with Defendant New Jersey Regional Council of Carpenters of the United Brotherhood of Carpenters and Joiners of America ("Regional Council of Carpenters") and Defendant Carpenters Local 255 of the United Brotherhood of Carpenters and Joiners of America ("Local 255") (collectively, "Defendants").  Currently before the Court is Plaintiff's motion to enjoin Defendants from processing any labor grievances directed at Plaintiff or from

1

demanding arbitration to determine Plaintiff's obligations, if any, under the Agreement. For the reasons set forth below, the Court finds that it is without jurisdiction to issue such injunctive relief. Accordingly, the Court will deny Plaintiff's motion.[1]

## II. Factual Background

The facts necessary to determine the Court's jurisdiction to grant Plaintiff's request for injunctive relief are not in dispute. Plaintiff was an employer in the construction business. Compl. ¶ 2. Its practice for many years was to enter into so-called "pre-hire" collective bargaining agreements governing the employment of certain union tradesmen.[2] Its latest such pre-hire contract was the Agreement with Defendants at issue in this case. It took effect May 1, 2007 and was to run through April 30, 2013.[3] *Id.* at ¶ 12.

It appears that Plaintiff initially honored its obligation under the Agreement. Around March or April 2012, however, Plaintiff made the decision to "fundamentally and permanently change the nature and direction of its business enterprise." *Id.* at ¶ 17. Specifically, the company sought to operate essentially as a construction project manager rather than as a direct employer of construction industry tradesmen. It therefore laid off all of its current employees who were covered by the Agreement. *Id.* at ¶ 18.

---

[1] Because the Court's opinion rests entirely on jurisdictional grounds, the denial of Plaintiff's motion for injunctive relief in no way reflects upon the merits of Plaintiff's underlying claim concerning the repudiation of its Agreement with Defendants.

[2] The pre-hire collective bargaining agreement is a creature peculiar to the building and construction trades. Given the industry's vicissitudes, with work varying by the season and the size of a particular project, workers usually do not remain at a single job site long enough to engage in the traditional process for designating union representatives. *Int'l Ass'n of Bridge, Structural and Ornamental Iron Workers, Local 3 v. NLRB*, 843 F.2d 770, 773 (3d Cir. 1988). In response, the pre-hire agreement was developed, first as an informal industry practice, and later as codified in section 8(f) of the National Labor Relations Act. 29 U.S.C. § 158(f) (2006). Rather than requiring a union to gain majority support from a group of employees in a National Labor Relations Board-certified election before it can negotiate a collective bargaining agreement on the employees' behalf, as is generally required under federal labor laws, a pre-hire agreement allows employers and unions to enter into such agreements before the employees to be covered by the agreement have actually been hired. *Int'l Ass'n*, 843 F.2d at 773.

[3] The original expiration date of the Agreement was April 30, 2012, but the parties extended the Agreement for an additional year. Compl. ¶ 14.

Plaintiff asserted that under National Labor Relations Board precedent, it was privileged to repudiate the pre-hire Agreement without penalty. *Id.* at ¶ 21. It communicated this point of view to Defendant Regional Council of Carpenters. The Regional Council responded that the Agreement was in full effect and that Plaintiff had violated certain of its provisions. *Id.* at ¶ 24, 26. Accordingly, Defendants filed formal grievances against Plaintiff, and it is possible that they may demand arbitration to resolve those grievances. Plaintiff has refused to participate and now asks the Court for an injunction to halt that process pending resolution of its declaratory judgment claim.

### III. Parties' Claims

A. Defendants' Contention That the Court is Without Jurisdiction

Defendants assert that the Norris-LaGuardia Act ("NLA" or "Act"), 29 U.S.C. §§ 101-115 (2006), divests the Court of jurisdiction to issue the injunctive relief Plaintiff seeks in this matter. Def.'s Opp. Mem. 14 (citing *Lukens Steel Co. v. Steelworkers*, 989 F.2d 668 (3d Cir. 1993); *Steris Corporation v. Automobile Workers*, 489 F.Supp.2d 501 (W.D. Pa. 2007); *Camping Const. Co. v. Iron Workers*, 915 F.2d 1333 (9th Cir. 1990)). Among its many provisions, the NLA states that a district court may not issue an injunction in a labor dispute unless it finds that certain procedural and substantive requirements have been met. *See* 29 U.S.C. §§ 107, 109. Defendants maintain that the instant matter involves a labor dispute, as that term is defined in the Act, and that Plaintiff has failed satisfy the relevant requirements. Thus, Defendants conclude, injunctive relief is not available.

In addition, Defendants direct the Court's attention to the well-established preference in this Circuit for disputes between a union and an employer to be resolved through arbitration rather than judicial litigation. Def.'s Opp. Mem. 16 (citing *Butler Armco Independent Union v.*

3

*Armco, Inc.*, 701 F.2d 253, 255 (3d Cir. 1983)). They acknowledge that despite this preference, it is appropriate for courts to decide questions of so-called "arbitrability" in labor disputes; these are questions of whether a collective bargaining agreement has even created a duty in the first place to arbitrate the particular grievance asserted by one or more parties to the agreement. *Id.* (citing *AT&T Tech., Inc. v. Communications Workers of America*, 475 U.S. 643, 648-49 (1986); *Wright v. Universal Maritime Service Corp.*, 525 U.S. 70, 78 (1998)). However, Defendants maintain that the question in this case is not one of *aribtrability* but rather one of contract *validity*: that is, Plaintiff claims that, notwithstanding any language in the Agreement requiring the parties to arbitrate certain disputes, the Agreement itself has been properly repudiated and therefore no longer places any obligations on either party. Thus, Defendants conclude, the issue should be presented to an arbitrator in the first instance. *Id.* (citing *New Jersey Statewide Laborers Benefit Funds v. Mark Const.*, No. 07-05934, 2008 WL 3833542 at *2 (D.N.J. Aug. 13, 2008) ("[T]he Supreme Court [has made] clear that challenges of the contract's validity as a whole must be made and considered during the first instance; the arbitration hearing.")). Accordingly, Defendants argue that because Plaintiff's claims go to the underlying validity of the contract, an arbitrator, rather than a federal district judge, should have the first opportunity to resolve the matter.

B.  Plaintiff's Response

Plaintiff makes two principal arguments in support of its motion to enjoin the grievance and arbitration processes. First, Plaintiff maintains that the NLA does not apply to the instant matter and therefore has no effect on the Court's jurisdiction to issue the requested injunction. Specifically, Plaintiff claims that the repudiation of its pre-hire Agreement with Defendants does not present a "labor dispute" that would trigger application of the NLA. It attempts to establish

4

this claim largely by implication. Specifically, it relies heavily on the Third Circuit's affirmance of a district court's preliminary injunction in *Ameristeel Corp. v. Teamsters Local 430*, 267 F.3d 264 (3d Cir. 2001). In that case, the plaintiff company purchased a business that had been party to a collective bargaining agreement with the defendant union. In its purchase contract, the plaintiff specifically stated that it would not be bound by the agreement. Nonetheless, the union claimed that the plaintiff was a successor to the agreement and was still bound by its terms. Accordingly, the union filed a grievance with plaintiff and moved for arbitration. *Id.* at 266. In response, the plaintiff sought an injunction in federal district court preventing the arbitration from proceeding. The Third Circuit affirmed the district court's grant of a preliminary injunction.

Plaintiff acknowledges that in *Ameristeel*, neither the Third Circuit nor the district court even mentioned the NLA. Neither party raised the issue in its briefs to the Third Circuit panel. From this silence, Plaintiff asserts that the Third Circuit must have implicitly determined that the NLA did not apply to the facts of that case. *See* Pl. Reply Br. 18. Plaintiff characterizes the facts of *Ameristeel* and those in the instant case as "procedurally and factually analogous." *Id.* at 14. Thus, because both cases involved claims that no valid collective bargaining agreement existed between the employer and the union, both cases do not involve a labor dispute that would trigger application of the NLA. *Id.* at 16.

Plaintiff's second argument is that even if the NLA does apply, the company has satisfied the Act's procedural and substantive requirements. *Id.* at 17. Thus, Plaintiff contends, the Court has jurisdiction to issue the requested injunction.

**IV. Discussion**

A. General Governing Law

The Norris-LaGuardia Act severely limits the jurisdiction of federal courts to issue injunctions in labor disputes. *Camping Const. Co. v. District Council of Iron Workers*, 915 F.2d 1333, 1341 (9th Cir. 1990). The Act provides, in relevant part, that "[n]o court of the United States . . . shall have jurisdiction to issue any . . . temporary or permanent injunction in a case involving or growing out of a labor dispute, expect in a *strict conformity* with the provisions of this Act . . . ." 29 U.S.C. § 101 (2006) (emphasis added). These "provisions" set forth a number of procedural and substantive requirements. Specifically, section 7 of the Act requires the party seeking the injunction to produce witnesses who will testify at a hearing (with opportunity for cross-examination) in support of the relevant allegations in the complaint. 29 U.S.C. § 107 (2006). The testimony must establish five things:

> (a) That unlawful acts have been threatened and will be committed unless restrained or have been committed and will be continued unless restrained . . . ;
>
> (b) That substantial and irreparable injury to complainant's property will follow;
>
> (c) That as to each item of relief granted greater injury will be inflicted upon complainant by the denial of relief than will be inflicted upon defendants by the granting of relief;
>
> (d) That complainant has no adequate remedy at law; and
>
> (e) That the public officers charged with the duty to protect complainant's property are unable or unwilling to furnish adequate protection.

*Id.* Further, the parties seeking the injunction must file a bond with the court. *Id.*

Section 9 of the Act requires the Court to make findings of fact on the record prior to issuing the injunction; in addition, the Court must tailor any injunctive relief to cover only "such specific act or acts as may be expressly complained of in the bill of complaint." 29 U.S.C. § 109 (2006). Finally, section 8 of the Act prohibits granting an injunction to any plaintiff who has

"failed to make every reasonable effort to settle such dispute either by negotiation or with the aid of any available governmental machinery of mediation or voluntary arbitration." 29 U.S.C. § 108 (2006).

The Third Circuit employs a four-step analysis to determine whether the NLA prevents a court from issuing an injunction. *Lukens Steel Co. v. United Steelworkers of America*, 989 F.2d 668, 676 (3d Cir. 1993). First, it is necessary to ascertain whether the action in question involves a labor dispute, as that term is defined in the NLA. *Id.* Second, the court must determine whether the relief sought by the plaintiff is in fact an injunction under the meaning of the NLA. *See id.* Third, if court answers the first two questions affirmatively, it must then consider whether the injunction complies with the substantive and procedural requirements of the NLA. *See id.* Fourth, if the injunction cannot satisfy those requirements, the court should consider whether the injunction falls within a judicially carved exception to the NLA. *See id.*

With regard to the meaning of "labor dispute," the Act defines the term as

> [a]ny controversy concerning terms or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment, regardless of whether or not the disputants stand in the proximate relation of employer and employee.

29 U.S.C. § 113 (2006). This is a "broad definition" which the Supreme Court has consistently declined to construe narrowly. *See Lukens Steel*, 989 F.2d at 676-77 (citing *Burlington Northern R.R. Co. v. Brotherhood of Maintenance of Way Employees*, 481 U.S. 429, 442 (1987)). Thus, such disputes are not limited only to cases in which one party is "using its economic power to bring pressure on the other." *Id.* Instead, "a case involves a labor dispute if 'the employer-employee relationship [is] the matrix of the controversy.'" *Id.* at 676 (quoting *Columbia River packers Ass'n, Inc. v. Hinton*, 315 U.S. 143, 147 (1942)) (modification in original).

7

Accordingly, the Third Circuit has squarely held that "an action by an employer to enjoin a union from proceeding to arbitration involves a labor dispute." *Id.* (citing *In re District No. 1-Pacific Coast Dist., Marine Engineers' Beneficial Ass'n*, 723 F.2d 70, 74 n.2 (D.C. Cir. 1983) (finding a labor dispute on similar facts with "no doubt whatever"); *Camping Const. Co.*, 915 F.2d at 1343 (arriving at the same conclusion with "absolutely no doubt")); *see also Fiend Inc. v. International Alliance of Theatrical Stage Employees*, 827 F.Supp.2d 1030, 1033-34 (D. Minn. 2011) (noting that "six courts of appeals have ruled that the [NLA] divests the court of jurisdiction to enjoin arbitration of a labor dispute in [cases brought under § 301 of the Labor Management Relations Act] unless the requirements of the Act are met) (citing *Triangle Constr. & Maint. Corp. v. Our Virgin Islands Labor Union*, 425 F.3d 938, 940 (11th Cir. 2005); *AT&T Broadband, LLC v. Int'l Bhd. Of Elec. Workers Local 21*, 317 F.3d 758, 759-63 (7th Cir. 2003); *Tejidos de Coamo, Inc. v. International Ladies' Garment Workers' Union*, 22 F.3d 8, 11-13 (1st Cir. 1994); *Lukens Steel*, 989 F.2d at 676-79; *Camping Const. Co.*, 915 F.2d at 1340-50; *In re District No. 1-Pacific*, 723 F.2d at 77).

With respect to the third step in the analysis,[4] the procedural and substantive requirements of section 7 of the Act "reflect[] a broader goal of . . . prevent[ing] judicial interference in management-labor relations except in narrowly defined circumstances where strict procedures are followed." *Lukens Steel*, 989 F.2d at 678 (citing *United Tel. Workers v. Western Union Corp.*, 771 F.2d 699, 703-04 (3d Cir. 1985)). Relatedly, courts should give particular scrutiny to a party's request to enjoin an arbitration proceeding or grievance process; these requests may well run counter to the NLA's section 8 requirement that the party seeking an injunction first exhaust negotiation, mediation, or arbitration mechanisms before coming to

---

[4] The second step is omitted from the Court's analysis because there appears to be no doubt that Plaintiff is in fact seeking an injunction.

federal court. *See id.* (citing *Camping Const. Co.*, 915 F.2d at 1346; *In re District No. 1-Pacific*, 734 F.2d at 81)). As a general matter, a district court must adhere strictly to the explicit terms of the NLA. *Id.*

For the fourth and final step in the *Lukens Steel* analysis, courts have recognized only two judicially carved exceptions to the NLA: 1) those to accommodate the strong federal policy in favor of arbitration; and 2) those to reconcile the NLA with other federal statutes. *Id.* Clearly, an injunction designed to halt an arbitration or grievance proceeding would fly directly in the face of the first exception. *See Lukens Steel*, 989 F.2d at 678; *Tejidos de Coamo, Inc. v. International Ladies' Garment Workers' Union*, 22 F.3d 8, 12 (1st Cir. 1994) (holding that a suit to enjoin a labor arbitration does not fall within any recognized exceptions to the NLA and noting that "[i]t requires no argument to show that [a] stay of arbitration . . . is not a step fostering arbitration").

B. Section 7 requirements

The parties in the instant action strongly dispute whether Plaintiff has established the five conditions set forth in section 7 of the NLA. The Court's authority to issue the injunction requested is conditioned on Plaintiff satisfying this burden, either through testimony at a hearing or by stipulation between the parties. *See* 29 U.S.C. § 107.

    *i. Unlawful acts will be committed*

The NLA requires the party requesting the injunction to demonstrate "that unlawful acts have been threatened and will be committed unless restrained or have been committed and will be continued unless restrained." 29 U.S.C. § 107(a). In cases such as the instant matter brought under section 301 of the Labor Management Relations Act,[5] the requirement that a court find a

---

[5] Section 301 of the Labor Management Relations Act vests federal courts with subject matter jurisdiction to hear certain types of labor disputes involving an alleged breach of a collective bargaining agreement. *See Textron*

threat of unlawful acts is not generally relevant.  *Aeronautical Indus. Dist. Lodge 91 of Intern. Ass'n of Machinists and Aerospace Workers v. United Techs. Corp.*, 230 F.3d 569, 582 (2d Cir. 2000) (noting that courts may relax some of the procedural requirements of the NLA in order to "accommodate[] the conflicting purposes of the NLA and the [Labor Management Relations Act]").  Thus, a court need not strictly apply this requirement in the 301 context.  *See Tejidos de Coamo*, 22 F.3d at 13 (considering a dispute between employer and union over whether the parties had properly executed an extension to their collective bargaining agreement and with respect to employer's request for an injunction to stay an arbitration proceeding finding "good reason to preserve at least the potential for injunctive relief where unlawful (but non-violent) acts threaten to cause 'substantial and irreparable injury' to some property-like interest (other than physical security)").

### ii. Substantial and irreparable injury will follow

The party seeking an injunction in a labor dispute must show that the relief is necessary to prevent "substantial and irreparable injury to . . . property."  29 U.S.C. § 107(b).  At least one district court in the Third Circuit has held that forcing an employer to arbitrate a grievance pursuant to a collective bargaining agreement to which it is not a party amounts to irreparable harm.  *Ameristeel Corp. v. Int'l Brotherood of Teamsters*, 2000 U.S. Dist. LEXIS 22114 at *8-9 (M.D. Pa. Mar. 17, 2000) (citing *PaineWebber, Inc. v. Hartman*, 921 F.2d 507, 515 (3d Cir. 1990)).  But the inquiry does not end there because the district court in *Ameristeel* reached this conclusion outside of the NLA context.  The court in that case was considering the general injunctive relief standard of "irreparable harm" rather than the NLA-specific standard of "substantial and irreparable injury to . . . property."  While this Court could find no Third Circuit

---

*Lycoming Reciprocating Engine Div., Avco Corp. v. United Automobile, Aerspace, Agricultural Implement Workers of America*, 523 U.S. 653, 657-58 (1998).

case exploring the difference between the two standards, the First Circuit has found there to be a significant distinction: "[u]nder ordinary standards for injunctive relief, irreparable injury is nominally required but courts are often generous where the complainant's claim on the merits is very strong or unanswerable. Under section 7, however, there is no such generosity." *Tejidos de Coamo*, 22 F.3d at 15. Given the choice by Congress in drafting the NLA to add an additional modifier, "substantial," to the traditional "irreparable injury" standard for injunctive relief, the Court is inclined to agree with the First Circuit that the inquiry for purposes of the Act must be more rigorous than it would be for purposes of an ordinary request for injunctive relief. Thus, it does not consider the finding of "irreparable injury" in *Ameristeel* controlling in the present context of the NLA's "substantial and irreparable injury to . . . property" standard.

Two circuit courts have held that there is no substantial and irreparable injury to property when an employer is compelled to arbitrate a dispute pursuant to a collective bargaining agreement and the employer claims it is no longer a party to the agreement. *Tejidos de Coamo*, 22 F.3d at 14-15; *Camping Const. Co.*, 915 F.2d at 1349. Both courts noted that arbitration awards are not self-executing; to have any binding effect on an unwilling party, the award must be enforced in federal court. *Id.* Thus, if the employer can successfully demonstrate at the enforcement proceeding that it lawfully repudiated the collective bargaining agreement that forced the arbitration in the first place, the court will not enforce the award, and therefore the employer will suffer no actual harm. Moreover, the "short time and slight expense involved in the typical arbitration . . . would scarcely qualify as irreparable injury." *Camping Const. Co.*, 915 F.2d at 1349; *see also Tejidos de Coamo*, 22 F.3d at 14-15 ("[C]ourts have ordinarily not deemed litigation expense to be substantial and irreparable injury warranting an injunction . . . .") (citing *Renegotiation Board v. Bannercraft Clothing Co.*, 415 U.S. 1, 24 (1974)).

### iii. *Greater injury will be inflicted upon plaintiff by denying relief*

The analysis for this requirement is the same in the context of the NLA section 7 as it would be for any request for an injunction. *See Tejidos de Coamo*, 22 F.3d at 13 n.9.

### iv. *No adequate remedy exists at law*

The analysis for this requirement is also the same in the context of the NLA section 7 as it would be for any request for an injunction. *See id.*

### v. *Public officers charged with protecting plaintiff's property are unable to do so*

Like the first requirement, the fifth requirement has little relevance in a dispute concerning the validity of a collective bargaining agreement where there is no threat of a worker strike or any violent or fraudulent acts. Thus, the Court may essentially ignore it for purposes of deciding the preliminary injunction issue. *See Aeronautical Indus. Dist. Lodge 91*, 230 F.3d at 582.

## V. Analysis

### A. Applicability of the NLA

Plaintiff claims that its request for an injunction in this case does not trigger the NLA because the action does not involve a "labor dispute" within the meaning of the Act. Pl. Reply Br. 18. In support of this claim it relies principally on *Ameristeel Corp. v. Teamsters Local 430*.

Plaintiff's reliance on *Ameristeel* seems misplaced for three reasons. First, *Ameristeel* does not discuss the NLA at all in its analysis. The fact that the issue did not arise during the litigation cannot permit an inference that the NLA would not apply in the same or similar cases in the future. Plaintiff appears to ask the Court to consider the Third Circuit's silence on the issue as an implicit holding that the NLA does not apply to cases in which an employer claims that it need not submit to arbitration with a union because there is no valid collective bargaining

agreement in place.  *See* Pl. Reply Br. 18.  The Court respectfully declines to lend so broad a reading to *Amersteel*.

Second (and relatedly), to accept Plaintiff's "implicit holding" theory would essentially require the Court to conclude that *Ameristeel* had overruled the unequivocal holding of *Lukens Steel* that actions by employers to enjoin a union from proceeding to arbitration do present "labor disputes" that trigger application of the NLA.  *See Lukens Steel*, 989 F.2d at 676.  The Court cannot accept this interpretation.

Third, despite Plaintiff's claim that the facts of the instant case that those of *Ameristeel* are "procedurally and factually analogous," the Court finds the cases readily distinguishable.  In *Ameristeel*, the plaintiff employer purchased a company that was a party to a collective bargaining agreement with the union.  The purchasing contract made clear that the plaintiff employer was not going to be bound by the agreement moving forward.  *Ameristeel*, 267 F.3d at 266-67.  The union argued that the agreement did apply to the purchasing employer.  *Id.*  Thus, the Third Circuit was presented with a situation in which the party claiming it was not bound by the collective bargaining agreement had never had *any* dealings whatsoever with the defendant union.  Rather, the union was essentially trying to draw in the plaintiff employer against its will to an agreement the employer had never assented to in the first place.

Here, on the other hand, there is no dispute that for many years Plaintiff and Defendant were parties to a valid collective bargaining agreement.  It was not until Plaintiff unilaterally terminated the agreement that this dispute arose.  Thus, given that here, there was an "employer-employee" relationship in a way that never existed between the parties in *Ameristeel*, the Court may easily distinguish the two cases and conclude that the NLA applies to the instant dispute, even if somehow it did not apply in *Ameristeel*.

Accordingly, because *Ameristeel* is not controlling in this case, and because this Circuit in *Lukens Steel* (along with five other circuit courts to address the issue)[6] has squarely held that an action by an employer to enjoin a union from proceeding to arbitration involves a "labor dispute" within the meaning of the NLA, the Court finds that the instant matter does involve a labor dispute and that Plaintiff will therefore have to satisfy the Act's requirements as a condition of obtaining the requested injunctive relief.

B.  NLA Section 7 Requirements

Rather than considering all five of the section 7 requirements, it is sufficient for purposes of deciding Plaintiff's motion for the Court to find that Plaintiff has failed to demonstrate that it will suffer "substantial and irreparable injury to [its] property" if injunctive relief is not forthcoming.  *See* 29 U.S.C. § 107(b).

Plaintiff describes its injury as being "forced to participate unwillingly in grievance and/or arbitration proceedings without any contractual obligation to do so."  Pl. Reply Br. 20.[7] Plaintiff argues that such injury is sufficient because the Third Circuit has stated that "harm to a party would be per se irreparable if a court were to . . . compel [a] party, who has not agreed to do so, to submit to an arbitrator's own determination of its authority."  *PaineWebber Inc. v. Hartman*, 921 F.2d 507, 515 (3d Cir. 1990).  But *PaineWebber* was a case that did not involve a labor dispute or the NLA; thus, the Third Circuit in that case was considering the traditional

---

[6] *Fiend Inc. v. International Alliance of Theatrical Stage Employees*, 827 F. Supp. 2d 1030, 1033-34 (D. Minn. 2011) (noting that "six courts of appeals have ruled that the [NLA] divests the court of jurisdiction to enjoin arbitration of a labor dispute in § 301 cases unless the requirements of the Act are met) (citing *Triangle Constr. & Maint. Corp. v. Our Virgin Islands Labor Union*, 425 F.3d 938, 940 (11th Cir. 2005); *AT&T Broadband, LLC v. Int'l Bhd. Of Elec. Workers Local 21*, 317 F.3d 758, 759-63 (7th Cir. 2003); *Tejidos do Coamo*, 22 F.3d 8, 11-13 (1st Cir. 1994); *Lukens Steel*, 989 F.2d at 676-79; *Camping Const. Co.*, 915 F.2d at 1340-50; *In re District No. 1-Pacific*, 723 F.2d at 77).

[7] Plaintiff did call a witness at the October 5, 2012 hearing on the instant motion.  However, the witness provided no testimony regarding the alleged harm the company would face if its request for injunctive relief were denied.  Thus, although not in strict conformity with the NLA's requirements, the Court relies on the averments in Plaintiff's moving papers.

14

"irreparable harm" standard that applies to any injunction rather than the "substantial and irreparable injury to . . . property" standard that obtains in the context of the NLA.[8] As noted above, the Court finds that the standards are distinct and adopts the view of the First Circuit that, while the requirement of irreparable injury may be only nominally required under ordinary standards for injunctive relief, "[u]nder section 7 [of the NLA] . . ., there is no such generosity." *Tejidos de Coamo*, 22 F.3d at 15. Thus, the Court does not find the principal of *PaineWebber* highlighted by Plaintiff to be dispositive in the present case.

Instead, every court to consider this issue in the NLA context has held that the sort of harm Plaintiff alleges does not rise to the level of "substantial and irreparable injury to property." *See Tejidos de Coamo*, 22 F.3d at 14-15; *Camping Constr. Co.*, 915 F.2d at 1349; *Fiend*, 827 F. Supp. 2d at 1035. This Court similarly finds that Plaintiff has not met its burden of demonstrating substantial and irreparable injury sufficient to satisfy the requirements of section 7 of the NLA. Thus, the NLA divests the Court of jurisdiction to issue injunctive relief in this labor dispute.

C. Policy

While finding that it must deny Plaintiff's motion because it is without jurisdiction to issue the requested injunctive relief, the Court is nonetheless mindful of Plaintiff's common-sense argument that granting the injunction now may well conserve judicial resources, as well as time and expense for both parties. That is, there is at least a possibility that Plaintiff may have to engage in an arbitration proceeding with Defendants, only to come right back to this or another federal district court and establish that it lawfully repudiated the contract on which the arbitration

---

[8] Plaintiff is correct that the district court's opinion in *Ameristeel*, which did involve a labor dispute, relied on the language of *PaineWebber* in finding that the plaintiff employer in that case had demonstrated irreparable injury. But as noted above, *Ameristeel* did not engage in a section 7 NLA analysis, and thus the court presumably was applying the traditional irreparable harm for any injunction. In addition, the Third Circuit, in affirming *Ameristeel*, did not explicitly adopt the district court's finding regarding the sufficiency of plaintiff's injury.

15

was based.  If Plaintiff were successful in this regard, it could essentially nullify the result of the arbitration proceeding.  Such an outcome would have largely the same practical effect as if the Court simply enjoined the arbitration, but would involve added time and expense for both parties, the arbitrator, and, to some extent, the Court.  It was a similar concern that prompted the Third Circuit in *Ameristeel* to recognize "the futility and inappropriateness of arbitration when the substantive terms of the bargaining agreement cannot be binding on the new entity." *Ameristeel*, 267 F.3d at 276; *see id.* at 276-77 (approving of an injunction to stay arbitration proceedings when doing so would avoid "the paradoxical situation in which AmeriSteel would be forced to arbitrate the extent of its obligations under the CBA, and yet, because it has no such obligations, the arbitrator would be powerless to enforce these obligations").

       While the foregoing scenario admittedly may be an inelegant one, the Court cannot ignore the clear requirements of the NLA simply to achieve modest efficiency gains.  To hold otherwise would require the Court to recognize a new judicially carved exception to the NLA.  But as Judge Boudin noted in *Tejidos de Coamo*, "[m]odern labor law . . . is largely a construct of Congress, the Labor Board, and the Supreme Court."  *Tejidos de Coamo*, 22 F.3d at 13.  As it was for the First Circuit so does this Court now agree, "the edifice does not need another architect."  *Id.*

## VI. Conclusion

For the reasons stated above, the Court is without jurisdiction to grant the motion to enjoin Defendants from processing any labor grievances directed at Plaintiff or from demanding arbitration arising out of the parties' latest collective bargaining agreement.  Thus, Plaintiff's motion will be denied.  The Court will issue an appropriate order.


Dated:   10/17/12                                               /s/ Robert B. Kugler
                                                                ROBERT B. KUGLER
                                                                United States District Judge