IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

|  |  |  |
|---|---|---|
| STANKER & GALETTO, INC., | : | |
| | : | Civil No. 12-5447 (RBK/KMW) |
| Plaintiff, | : | |
| | : | |
| v. | : | **OPINION** |
| | : | |
| THE NEW JERSEY REGIONAL COUNCIL OF CARPENTERS OF THE UNITED BROTHERHOOD OF CARPENTERS AND JOINERS OF AMERICA. | : | |
| and | : | |
| CARPENTERS LOCAL 255 OF THE UNITED BROTHERHOOD OF CARPENTERS AND JOINERS OF AMERICA | : | |
| Defendants | : | |

**KUGLER**, United States District Judge:

This matter arises out of a dispute between Plaintiff Stanker & Galetto, Inc. ("Plaintiff") and Defendants New Jersey Regional Council of Carpenters and Carpenters Local 255 (collectively, "Defendants") concerning a collective bargaining agreement. Currently before the Court is Plaintiff's motion for summary judgment. For the reasons stated herein, the Court will grant the motion.

**I.     FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

The facts underlying the instant motion are not in dispute and can be summarized briefly. Plaintiff is a corporation engaged in the building and construction industry. Pl.'s SUMF ¶ 1. Its practice for many years was to enter into so-called "pre-hire" collective bargaining agreements governing the employment of certain union tradesmen.[1] *See id.* ¶¶ 9, 12-13. Plaintiff, a member of the Building Contractors Association of New Jersey ("Association"), assigned this entity to negotiate collective bargaining agreement on its behalf. *Id.* ¶¶ 3, 5. The Association then negotiated with Defendant the pre-hire agreement that is the subject of the present dispute ("Agreement"). *Id.* ¶¶ 10-11. The Agreement took effect May 1, 2007 and was to run through April 30, 2013. *Id.* ¶ 11.

In April 2012, Plaintiff made the decision to "change the nature and direction of its business in a fundamental and permanent manner." *Id.* ¶ 16. Specifically, the company sought to operate essentially as a construction project manager rather than as a direct employer of construction industry tradesmen. On April 10, 2012, it laid off all of its current employees who were covered by the Agreement. *Id.* ¶ 37. Shortly thereafter, it notified Defendant that it was repudiating the parties' Agreement. *Id.* ¶ 51.

Plaintiff contends that, notwithstanding the fact that the Agreement was to run through April 2013, it was privileged unilaterally to withdraw from the Agreement under the so-called "one-man unit" rule. This rule, fashioned through National Labor Relations Board administrative decisions, "explicitly allow[s] an employer . . . to repudiate a pre-hire agreement and discontinue its duties under the agreement where it employs no more than one employee in

---

[1] The pre-hire contract is a collective bargaining agreement unique to the building and construction trades. It arose from informal industry practice, but was then codified as section 8(f) of the National Labor Relations Act. 29 U.S.C. § 158(f) (2006). Rather than requiring a union to gain majority support from a group of employees in a National Labor Relations Board-certified election before it can negotiate a collective bargaining agreement on the employees' behalf, as is generally required under federal labor laws, a pre-hire agreement allows employers and unions to enter into such agreements before the employees to be covered by the agreement have actually been hired. *Int'l Ass'n of Bridge, Structural and Ornamental Iron Workers, Local 3 v. N.L.R.B.*, 843 F.2d 770, 773 (3d Cir. 1988).

the relevant [bargaining] unit." *J.W. Peters, Inc. v. Bridge, Structural and Reinforcing Iron Workers, Local Union 1*, 398 F.3d 967, 974 (7th Cir. 2005). Thus, Plaintiff concludes, because it employs zero workers in its bargaining unit, it is no longer bound by the Agreement with Defendant. It therefore seeks a declaratory judgment in this Court establishing both its valid termination and that it is under no legal obligation to participate in any grievance and/or arbitration proceeding with Defendants.

Defendants offers two principal arguments in response. First, they assert that the Court has no jurisdiction over the instant matter, because the dispute over the parties' Agreement is primarily "representational" in nature and therefore does not fall within the Court's jurisdiction over "suits for violation of [certain labor-related] contracts" under Section 301(a) of the Labor Management Relations Act of 1947. Opp. Br. 20-27. Instead, Defendants argue, this matter is within the primary jurisdiction of the National Labor Relations Board. *Id.*

Second, Defendants claim that because Plaintiff is a member of the Contractors' Association, and because the Association negotiated the collective bargaining Agreement on Plaintiff's behalf, the appropriate "bargaining unit" for purposes of applying the one-man unit rule is actually the entirety of the 2,000 or so carpenters who work for Association-member employers across the state of New Jersey. *Id.* at 12-20. Thus, Defendants conclude, although Plaintiff itself does not employ any covered employees, it is considered to be part of this multi-employer bargaining unit, and therefore cannot lawfully repudiate the Agreement under the one-man unit rule. *Id.* The Court will address each of these arguments in turn.

## II.     DISCUSSION AND ANALYSIS

### A.     The Court's Jurisdiction

Section 301(a) of the Labor Management Relations Act of 1947 vests the federal courts with subject matter jurisdiction over "[s]uits for violation of contracts between an employer and a labor organization representing employees . . . ." 29 U.S.C. § 185(a). This provision specifically encompasses actions in which "a declaratory judgment plaintiff accused of violating a collective-bargaining agreement . . . ask[s] a court to declare the agreement invalid." *Textron Lycoming Reciprocating Engine Div., Avco Corp. v. United Automobile, Aerospace, Agricultural Implement Workers of America, Int'l Union*, 523 U.S. 653, 658 (1998).

In this case, it is undisputed that Defendants accused Plaintiff of violating the parties' section 8(f) pre-hire Agreement. Defendants sent Plaintiff a letter on June 7, 2012 stating that in their view, Plaintiff had abrogated a collective bargaining agreement that remained in full effect. Certif. of Pl.'s Counsel, Exh. J. Defendants then informed Plaintiff that they were initiating a Step I grievance procedure on the grounds that Plaintiff was "in violation of" at least four articles of the Agreement. *Id.*, Exh. L. Plaintiff then initiated this declaratory judgment action, asserting that the collective bargaining agreement was no longer in effect (and hence invalid) because it had been lawfully repudiated under the one-man unit rule. Under these circumstances, the Court finds that this is exactly the type of action contemplated by the *Textron* Court over which a federal court may properly exercise subject matter jurisdiction. *See* 523 U.S. at 658.[2] Thus,

---

[2] Defendants argue forcefully that this case falls within the primary jurisdiction of the NLRB, and that therefore the Court "is pre-empted from ruling on plaintiff's claims." Opp. Br. 20. While Defendants do make a laudable effort in attempting to show that this case is not actually controlled by the dicta in *Textron*, relatively recent events have rendered Defendants' position effectively moot. That is, Defendants appear to argue that decisions regarding representational issues (most significantly, the determination of the proper bargaining unit for purposes of applying the one-man unit rule) should be made by the NLRB in the first instance. *See, e.g.*, Opp. Br. 26-27. But since the parties submitted their papers on the instant summary judgment motion, the NLRB *has* in fact made such a determination. Specifically, it dismissed Defendants' claim against Plaintiff, finding essentially that Plaintiff lawfully repudiated the collective bargaining agreement, and that the appropriate bargaining unit in this case was limited only to those "employees employed by the repudiating employer." Letter Dec. Dismissing Defs.' NLRB Action 2 (Doc. No. 33). This finding was specifically affirmed by the NLRB's Office of Appeals. Letter Dec. Affirming Refusal to Issue Compl. Against Pl. (Doc. No. 34). Thus, even accepting Defendants' own logic, there seems no longer to be any hindrance (if there ever was one to begin with) to the Court's exercising its § 301 subject

Defendants' argument that the Court is "pre-empted" from deciding the instant summary judgment motion is rejected.

**B.      Proper Bargaining Unit**

Defendants next argue that because Plaintiff was a member in a multi-employer Association and it authorized the Association to negotiate the collective bargaining Agreement on its behalf, the "appropriate bargaining unit, for purposes of the 'one-man unit rule,' is the multi-employer bargaining unit," consisting of over 2,000 carpenters across the state of New Jersey.  Opp. Br. 6, 12-20.

Despite Defendants' attempts to support this position, the Court finds that under clear National Labor Relations Board precedent, the proper bargaining unit for purposes of the one-man unit rule in the section 8(f) context is limited only to the repudiating employer's employees. *E.g.*, *Stack Elec.*, 290 N.L.R.B. 73 (1988) (finding that appropriate bargaining units remained those of the individual employers' employees for section 8(f) pre-hire collective bargaining agreements); *Haas Garage Door Co.*, 308 N.L.R.B. 174 (1992).  This remains true even if the employer is a member of a multi-employer association and that association entered into a pre-hire agreement on the employer's behalf.  *Bufco Corp*, 291 N.L.R.B. 1015 (1988); *accord 1 Developing Labor Law*, 719-20 (5th ed. 2006) ("A Section 8(f) agreement, even if negotiated or adopted in the context of a multi-employer  bargaining, results only in an enforceable agreement covering a unit of the signatory employer's own employees.").[3]  Defendants' arguments to the contrary range from the apparently erroneous[4] to the simply unpersuasive, especially given that

---

matter jurisdiction over this action in which Plaintiff, accused of violating a collective bargaining agreement, seeks a declaratory judgment that the agreement is invalid.  *See Textron*, 523 U.S. at 658.

[3] As stated in footnote 2, above, the National Labor Relations Board Region 4 Director and the Board's Office of Appeals reached the same conclusion on this very issue in the related labor grievance between these parties.  *See* Doc. Nos. 33, 34.

[4] For example, Defendants make the assertion that in the *Bufco* case, the employer was "not an employer member of the multi-employer association which had negotiated the [collective bargaining agreement] with the union."  Opp.

they essentially ask the Court to ignore decades of otherwise clear National Labor Relations Board precedent. Thus, the Court finds that, for purposes of applying the one-man unit rule, it will consider only the number of covered employees directly employed by Plaintiff.

**C.      One Man Unit Rule**

Defendants' opposition brief concedes the validity of the one-man unit rule itself: namely, that an employer who is party to a section 8(f) pre-hire agreement may lawfully repudiate such agreement unilaterally and before its expiration if that employer permanently employs one or fewer covered workers in its bargaining unit. Opp. Br. 12 (citing *Stack Elec., Inc.*, 290 N.L.R.B. 575, 577 (1988)).

In this case, Defendants do not appear to dispute any of Plaintiff's factual averments. That is, they do not contest that Plaintiff made the "entrepreneurial determination to change the nature and direction of its business in a fundamental and permanent manner," by, among other things, "no longer directly employ[ing] employees to perform job tasks covered by the jurisdiction of the [parties'] collective bargaining agreement." Pl.'s SUMF ¶¶ 16-17. Plaintiff permanently laid off its nine covered workers on April 10, 2012 with formal written notice. *Id.* ¶¶ 37, 39. Since then, Plaintiff has "not self-performed work falling within the jurisdiction of Defendants and has not employed any employees for those purposes." *Id.* ¶ 43. Plaintiff also gave notice of these changes to its bargaining Association and to Defendant Regional Council.

---

Br. 13-14. But a straightforward reading of *Bufco* indicates otherwise. In that case, the employer executed letters of consent designating a subdivision of the National Electrical Contractors Association as its collective bargaining representative. *Bufco Corp.*, 291 N.L.R.B. 1015, 1015 (1988). This association then entered into collective bargaining agreements with the Electrical Workers' Union. *Id.* The employer then sought to repudiate these agreements. The Board's decision made clear that under these circumstances, the "appropriate units remained those of [the employer's] employees." *Id.* at 1017. Thus the Court is at a loss to understand Defendants' contention that the employer in Bufco was not a member of a multi-employer association which had negotiated a collective bargaining agreement on its behalf. Defendants are strongly advised in the future to exercise greater care not to mischaracterize persuasive authority in their submissions to the Court.

*Id.* ¶¶ 49, 50. Finally, it repudiated the parties' collective bargaining Agreement, citing its reliance on the one-man unit rule to do so. *Id.* ¶ 51.

On these facts, the Court concludes that Plaintiff lawfully repudiated its collective bargaining agreement with Defendant. It will therefore grant Plaintiff summary judgment, and enter a declaratory judgment accordingly.

## III. CONCLUSION

For the reasons stated above, the Court will grant Plaintiff summary judgment on Count One of its Complaint. An appropriate order shall issue today.


Dated:   8/28/2013 　　　　　　　　　　　　　　　　　　   /s/ Robert B. Kugler　　　
　　　　　　　　　　　　　　　　　　　　　　　　　　　　ROBERT B. KUGLER
　　　　　　　　　　　　　　　　　　　　　　　　　　　　United States District Judge